Thank you very much. Good morning. It's a great honor and a great privilege to come before the Ninth Circuit and to make argument. May I also please introduce my law partner, Meev Severson. Good morning. The court may require the payment of reasonable attorney's fees in securities cases if the court determines that the case is without merit. In our case, the distinguished Justice Gould, as the head of the merits panel, directed that fees were denied with regard to the underlying lawsuit that we brought alleging that there was a unlawful sale of security, specifically with respect to fees incurred in connection with the court to have the allocation made. And the district court asked the defendants to make that allocation and they came back and said we can't do it. Apportionment of the fees is appropriate and should have been done for three reasons. First, the merits panel, Justice Gould, directed that that be done. Second, the fraud-related issues in the case, which were what they could recover on, as Commissioner Shaw determined, were a relatively minor aspect of the case. Both he determined at the appellate record, the district court record was no different, and Mr. Shaw also said, or Commissioner Shaw, I should say, also indicated in the review of his record that he was doing this from a different perspective, that the district court may be done, the allocation of fees would probably be different, and stated forth the reasons why. So I guess I wanted to just, you know, ask, have you pointed to specific billing entries that you believe the district court should have disallowed because they were for time solely spent on the securities claims? That burden was on the defendant. The burden was not met. But in response to that, did you? What we argued is we said there was a failure of proof on their part across the board, and for this reason. Remember, Commissioner Shaw made his ruling after the ruling was made below, and there was a complexity here. To the credit of the district court, the district court was not the court that heard the underlying motions. In the underlying case, there were a series, or there was one motion brought by a number of other defendants, all contesting the question of securities law, and then these defendants did not bring that motion. Then there was a new round of motions. They brought one motion, and then it went up on appeal, and they're asking for over $400,000 for essentially that one motion. 27 of the 29 pages of that motion were all about securities. So on its face, there was no, the burden was not on us to go through their time records, and we couldn't, because they made their time records, we took the position that they failed altogether, and we took that position in front of the Because I want to understand your case, and if you could help me sort of disentangle the securities came from the fraud claims, because that seems to be your main point here. The securities cases, the securities case were not the fraud claims. That's what I'm asking you to help me disentangle. Okay. All right, so if the securities claims did not exist, wouldn't the defendants have basically have had to do the same work to defend against the fraud claims, because they shared the same sort of factual premise and overlapping legal elements. Absolutely not, and that's what, that is exactly what Commissioner determined when he said the presentation of the issues. But so you're relying on the Commissioner for your response. Well, I'm relying on, I'm relying on the reality of, if you look at... That's what I'd like for you to do, and just take out the Commissioner for a minute, and just tell me why you think they wouldn't have. Well, first of all, the motion, the law says what did they do, not what they would have had to do. Number one, the 27 of the 29 pages that they filed were all about the securities, and there's a reason for that. Remember, the reason for this is because you want to vindicate, as the Carver case says, you want to vindicate, and you want to protect people who are willing to come forward in merit cases, as Judge Gould determined, and that's the ruling that we really focus on. He determined that our case was meritorious, and that there should be no collection of attorney's fees, and this case is not just a regular case. The Securities and Exchange Commission filed an amicus brief in this case, because the 200 million dollars that were raised went to the very heart of the securities laws, because there was no registration. Then, after the fact, we actually found out the evidence that showed that they were offering the condominiums and the rental agreements at the same time. So what we were trying to show was, in fact, the truth, and just recently, just in March... The point is, if there's an intertwining, as they ruled in the Craver case, inextricable overlap means you don't get the money, for this reason. There's a policy issue. The policy issue is you want people...the enforcement of the federal securities laws rely heavily, heavily, as the Supreme Court has ruled numerous times, relies on individuals being willing to come forward and have the courage to vindicate these laws. And so what was ruled in the Carver case, it says attorney's fees related by inextricable overlap to the statutory claims were not recoverable, despite an attorney fee provision in the party's contracts, and to award fees for overlapping claims would frustrate the legislative intent, and that's exactly what happened here. But doesn't California law state that apportionment isn't necessary when different claims are inextricably intertwined? This is a federal law. What we're talking about here is...what we're talking about here is there's a federal ruling by Judge Gould that says no recovery of securities law claims. Those were the only claims that were the focus of the proceedings. The case was dismissed at the pleading stage. Judge Gould? Judge Gould, yes. Judge Gould ruled, Judge Gould's ruled when they asked for attorney's fees at the appellate level that no attorney's fees. No attorney's fees because it was a meritorious case. So all those other things about reasonableness, all the issues about the things that were brought up, and again I go back to this. The reason that this is so important is because...this isn't just about $450,000. This is about ability to lean people's homes. This is about sweeping in and taking their wages. No one will come forward to vindicate the securities laws if in a case like this where Justice Gould, who was the merits judge, justice, said no attorney's fees, and then we go back and they come up with a backward way to get in and get the 100% of what was... No fees on the securities claim, but fees on the breach of contract. And the commissioner awarded 30%. Right, and that's fair, but they made a decision after... You're saying 30% would be a fair apportionment error? I think a 30% would be fair had they done this. They went back and said no, no, we're not going to do that. We're not... When they went back and said, oh we can't apportion it, no way that they from their own record. And what Judge...what Commissioner Shaw did, they went back and refused to do it. And so, I mean, I think in a case like this, these people lost tens of millions of dollars. They have sued their other law firm to recover these losses. In the Beaver case, which just came out in March, that is before the Ninth Circuit, in the Beaver case, Beaver versus Tarsadia, they actually admitted that what they sold were commercial. Completely reversed themselves. That's at Beaver versus Tarsadia, 816 F 3rd, 1130, 1182. I would like to reserve the rest of my time with Your Honor's permission, and thank you, Your Honor, for allowing me to address your arguments. Thank you. Good morning. May it please the Court. Lynn Gallupo on behalf of Appellees Fifth Rock LLC and MKP1 LLC. Referring to Judge Gould's ruling, he awarded, actually the panel, the Ninth Circuit Court of Appeals, awarded fees on the fraud claims, just as the District Court did below on this order now presented on this appeal. The District Court's order on this appeal mirrors that ruling. Both courts awarded fees on the fraud claims. The security claims, the fees incurred in relation to security claims, were denied. We concede that our request for fees by $98,000. If you look at . . . It does seem, you know, somewhat inequitable that you may receive the bulk of your attorney's fees that you incurred in litigating the case, even though you have no entitlement to fees for the majority of the individual claims. So are there circumstances or cases where District Court could not abuse its discretion by making cuts, I guess, based on that basis? Well, let me first address that the $98,000 was not our initial reduction in fees. What was originally billed, and I will get to the case law that you're referring to as well, Your Honor. What was originally billed was $578,406. The appellees initially reduced that request by $121,916. They made a significant second reduction of $98,000. This totaled approximately a 40% reduction voluntarily by appellees. In terms of a further request for reduction or further apportionment, that is subject to wide discretion by the District Court. There has been no showing of abuse of discretion here. The District Court has the discretion to apportion fees between the parties to the contract. It also has the discretion as to whether to apportion fees related to the claims that are recoverable and are not recoverable. The District Court looked at our billing statements. We submitted all of our billing statements. We submitted a declaration of the billing partner who oversaw the work. We met our burden of proof. Billing statements are not required by the Ninth Circuit or California law. We submitted all of them. We redacted them. We reduced them. We performed the work for the District Court. The District Court had our evidence before us. In response, nothing was provided to the District Court by appellants. No single entries were challenged. They were generalized objections attacking the merits of the underlying transaction contending it was an illegal contract. That decision was already squarely determined by the Ninth Circuit Court of Appeal in Salome versus Tarsadia Hotels. This is a legal enforceable transaction. In terms of the purpose or the role of the fraud claims here have been diminished by appellants. There was a core facts of liability. All of the respondents or the appellees were grouped together. There was a lumping of liability for all of our clients. There was a core group of facts that under that upon which their claims were predicated. They asserted misrepresentations and omissions in relation to the alleged sale of an unregistered security. Their fraud claims were predicated upon this core allegation. Moreover, the work that was done in the District Court for which we sought recovery was not limited to the single motion to dismiss. We are entitled to fees in relation to all the work that is done throughout the course of the proceedings. This encompasses the research done in relation to the fraud claims. The fraud claims were also challenged on the statute of limitations grounds. They were part and parcel of the underlying litigation. You dispute that the fraud claims were a minor part of this litigation. I mean because they only encompass two of the eight claims I guess or was it eight securities fraud claims and then two or six and two. Six and two, Your Honor. So I'm just curious let me ask this a different way. You know if the District Court had said well since there are two of the of the of the six claims I'll give them 25% of the fees. Could the District Court have done that? Your Honor, the District Court has wide discretion in apportioning fees. Before the court, the District Court gave appellants two opportunities to demonstrate to it a different method to apportion fees. The District Court said you came the first round. The District Court said you came to me. You only provided generalized objections. There were no single billing entries that were challenged. You didn't provide me the sufficient evidence as means to apportion these claims. I'm going to give you a second chance. The District Court requests for supplemental briefing. When we submitted our supplemental briefing we redacted the fees and made a subsequent reduction. What was brought back was another challenge as to the merits of the underlying transaction as being an illegal contract and a generalized objections to the entirety of award. They requested that the entire award be stricken. Nothing should be awarded. The District Court was not given any other method or any other evidence as a means to further apportion the fees. Yes, Commissioner Shaw's order postdated that ruling. I would like to point out that Commissioner Shaw acknowledged that the District Court did not further apportion the fees. Commissioner Shaw also referenced the District Court's order noting that it could not further apportion fees because the facts in the law were so intertwined between the securities claims and the fraud claims that further apportionment would not happen. Commissioner Shaw then defended the District Court's order in this regard. He said, and I quote, the presentation of appellate issues was almost entirely devoted to legal analysis and not an explanation of facts or evidence. The segregation of claims and issues was difficult in the District Court because of the identity of the evidence and facts. In this court, the claims are predominantly differentiated by the legal analysis. This difference provides a basis for allocating or assigning a percentage of the work performed on the different issues by examining the legal briefs. This is at page 9 of Commissioner Shaw's order. Remind me, how did Commissioner Shaw ultimately divvy up the fees? He did apportion the legal work to the fraud fees to 30%. Yeah, on what basis? Again, I just can't remember. On what basis he said that the securities claims were predominant in the appellate level work. What was the basis for the, was it 30% that was the number he came up with? He gave 30% on the fraud claims, correct. Yeah, how did he arrive at 30 versus 40 versus 50? He did not provide sort of a methodology as a calculation. Instead, he stated that that was the allocation he was providing and due to the fact that it was on security claims versus fraud claims. Here, as I mentioned, we did that work for the District Court. We went back, we struck a significant amount of entries that we could identify as specifically pertaining to the securities claims. If the billing records, I assume that the District Court reviewed the billing records when it made its ruling to determine that no further allocation was possible because of the overlap in work performed in relations to the securities claims and the fraud claims. There was the core basis of a misrepresentation and omission related to whether an unregistered security was sold here. And are you saying that the plaintiffs made no argument in the District Court similar to the argument they made at pages 15 through 17 of their brief where they have these charts and say that in your motion to dismiss you cited 54 security cases, only four related to fraud, etc. They didn't make that kind of argument to the District Court? I cannot speak to that, Your Honor. I don't know that specifically. However, I do recall that the District Court concluded that there were generalized objections that were inadequate made to our request for fees on the fraud claims. The District Court also further found that there were no specific challenges to the billing entries itself. The generalized objections under Ninth Circuit and of the Ninth Circuit decision recently in Beaver v. Tarsadia Hotels referred to by counsel, that's on an entirely different issue. And the theory as to whether these were commercial contracts or not has not been reinvented. That language is in the purchase and sale agreement before the court and in this record and has been since May 2006 when appellants entered into those contracts. So this is not a quote-unquote new theory. It's raised without any relevance here. If the court has any further questions? Thank you. Thank you. Thank you for, I think, clarifying this. What Commissioner Shaw said was failing to identify and non-compensable issues would award a disproportionate amount of fees for an issue on which relatively little work was devoted. If you go to our appellate's supplemental excerpt and you look at their motion, at one motion, they want over $350,000 for preparing a 29-page motion that was filed in the District Court, 27 pages of which are focused on the question of the securities. This is what the case was all about. Now, what were the legal issue and what makes this a legal issue, which is, and what we argued to the court below, we said, quote, the failure of proof should prove fatal in light of the court's invitation for this evidence showing their fees on two non-securities causes of action. They went back and they said, defendants' attorneys state that they have already removed entries that relate directly to the securities issues. Plaintiffs do not point to specific entries, which we didn't. Based on this, the court concludes the issues of facts are so interrelated and intricately intertwined that apportioning fees would be impracticable, if not impossible. As a matter of law, that is error for which they should receive no benefit because of the Carver case. It says, attorneys' fees related by intricately overlap, that intricately overlap, to the statutory claims were not recoverable and they're not recoverable because the balancing says, well, look, if you're, if we're trying to vindicate and protect people who bring meritorious cases, we're not going to make you, if you can't, if you don't sit down and do it, my question is this, how could Commissioner Shaw do for an entire pellet record and come up with a 70-30, which was generous, but the people that were actually in charge of the litigation, knowing that they filed one motion that was 29 pages long, 27 pages of which addressed the securities issues, they didn't make any effort to do that. The burden was on them. They had the burden of proof. Let me ask you about the Jahnke case. Okay. Because I guess I read that case to take away your reliance on Carver. Am I wrong? Well, I mean, I think that if you look at, if you look at Carver and you look at the most recent case that, that, that has... Why don't we look at Jahnke, the case I asked you about. Okay. Well, it's from the California Supreme Court. Carver is just a court of appeal decision. It's from 2012, so relatively recent. Okay. It basically says Carver didn't apply in circumstances that seem to me indistinguishable with respect to the interplay between the securities fraud claims and the other claims here. Do you know the case I'm talking about? I don't, but I, but I'm getting the drift of what you're saying. And let me, let me go back for, to the basic thrust of what I'm saying. In our case, you have a decision by a highly respected, strict constructionist of the securities law, Justice Gould, making a determination that this is a meritorious case, saying that's the law of the case, that you have to make the allocation. The district court did not have the discretion to disregard that ruling by going back and saying it was too hard. That's what would be my answer. That, and that's exactly what happened in this case, Your Honor. And I, I, I'm out of, I'm out of my time, but, or maybe I'm not. Okay. Go ahead. I'm sorry. Please. Well... He's not out of his time. I'm not out of my time. Okay. I guess, I thought the problem here was just that the, the fees were overlapping. That the work that was done to defend against the securities fraud claims, in many ways... They were not overlapping, Your Honor. There's no way you can look at the record, just, Commissioner Gould said, no way. He was generous in giving them 30%. It was not overlapping, as he explained. All the things that he said were equally true of what happened to the district court. Had Judge Sabra retained the case, I have no doubt in my mind that after everything that he had to go through with this case, because remember what we're talking about. This was a well-crafted, all-out effort to figure out a way to raise 200 million dollars without registration. So there was a lot of legal angles about how they did it. And when the Securities and Exchange Commission read it, and I brought it to their attention, they jumped into the case and said, this is a hugely significant case because you found out a way to get around the registration provision. So that's why you've got to look at it from my perspective, from a policy point of view, and say, okay, if we have Justice Gould saying, no attorneys fees, you don't get to go back and say, oh I can't do that. You have to do it, and if you don't, you don't get rewarded by getting all the money that you otherwise, you know, had asked for to begin with. There was no reductions. They talk about reductions. Those were all things that they did offline. When they came in the first time, they asked for this amount of money, $405,000, and they got $405,000. There was no reduction. Once they put the money in, that's what they got. And to say, oh, we're going to have to give it to you because we can't make a distinction, flies in the face of the policy that Justice Gould, you know, acknowledged. And remember this, this was a meritorious case. We weren't able to persuade him, which is a real disappointment to the bottom of my shoes, but he at least went with us on that. And that, I think that says a lot about Justice Gould and his integrity, and I hope that you'll, you know, respect this decision. You're trying to draw a difference here, or make a point here that I'm not quite sure I understand. You say Judge Gould, you know, rendered a decision. You're talking about the decision where you were not successful in convincing or arguing on appeal that there was some sort of securities fraud here, correct? No. Which case? The decision that he made was they applied to him for attorney's fees. Under Section 11e, he had the discretion to say, hey, you lost. This wasn't a meritorious case. You have to pay. And he stepped back and said, no, no, no, no, no. You lost, but it was a meritorious case. You don't get attorney's fees. And then they went back and circumvented his decision by coming up with this thing about, oh, we can't tell the difference, and circumvented his ruling. And that's what Justice, or Commissioner Shaw did not do. That's what they did do. And Justice below, or the court below, tried to do the best that it could, but it had not heard the hearings, and it didn't have the benefit of Commissioner Shaw's decision, which may be a way to proceed. What decision of Judge Gould are you referring to? I just want to make clear. Okay, I'm referring to the decision that Judge Gould made at ER volume 2, 207. Oh, I'm sorry. I'm referring to the decision where Justice Gould, the order, 207. Okay, there was an order where Justice Gould said, you do not get securities law legal fees, period. Securities law legal fees. Right. He said, you do not get those. But remember, this was the same justice. Okay, you've answered my question. I just wanted to clarify. All right. Okay, thank you again, Your Honor, very much for your courtesy, and very much appreciate the opportunity. Thank you very much. Thank you for your
judges: Murguia, Watford, Vanaskie